**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT JAHODA,<br>individually and on behalf of all others<br>similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>1ST NATIONAL COMMUNITY BANK,<br><br>Defendant. | Case No.<br><br><br><br>Filed Electronically |

**CLASS ACTION COMPLAINT**

Comes now Robert Jahoda, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

**INTRODUCTION**

1. Plaintiff Robert Jahoda brings this action individually and on behalf of all others similarly situated against 1ST National Community Bank ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA") and its implementing regulations.

2. Plaintiff is a blind individual. He brings this civil rights class action against Defendant for failing to design, construct, and/or own or operate banking facilities that are fully accessible to, and independently usable by, blind people. Specifically, Defendant's ATMs are not fully accessible to, and independently usable by, blind people. From the time of their installation, Defendant's ATMs have never been accessible to, and independently usable by, blind people, and the ATMs are completely devoid of the mandatory operational features required to make them accessible to, and independently usable by, blind people, as required by

the ADA and its implementing regulations. Therefore, on behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendant's ATMs violate federal law as described and an injunction requiring Defendant to update or replace its ATMs so that they are fully accessible to, and independently usable by, blind individuals. Plaintiff further requests that given Defendant's historical failure to comply with the ADA's mandate, notwithstanding its actual knowledge of the requirements of the ADA as discussed below, the Court retain jurisdiction of this matter for a period of one year after Defendant certifies that it is fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

3. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

4. The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

5. Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181-89.

6. On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.[1]

---

[1] The DOJ is the administrative agency charged by Congress with implementing the requirements of the ADA.

7. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA standards for Accessible Design (1991 Standards), which were based upon the Americans with Disabilities Act Accessibility Guidelines (1991 ADAAG) published by the Access Board on the same date.[2]

8. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

9. In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

10. The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

---

[2] The Access Board was established by section 502 of the Rehabilitation Act of 1973. 29 U.S.C. §792. The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation. Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968. 42 U.S.C. § 4151 *et seq*. The Passage of the ADA expanded the Access Board's responsibilities.

The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." 42 U.S.C. 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations.

The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to title III.

11. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

12. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

13. The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part 36.[3]

**THE ADA HAS LONG REQUIRED THAT FINANCIAL INSTITUTIONS THAT OWN, OPERATE, CONTROL AND/OR LEASE ATMS PROVIDE ATMS THAT ARE FULLY ACCESSIBLE AND INDEPENDENTLY USABLE BY BLIND PEOPLE**

14. Since the enactment of the ADA in 1991, banks and financial institutions which provide banking services through ATMs have been required to ensure that all banking services available at the ATM are fully accessible to, and independently usable by, individuals who are blind. The 1991 DOJ Standards required that "instructions and all information for use shall be made accessible to and independently usable by persons with vision impairments." 28 CFR part 36, App. A. section 4.34.4. Defendant has never been in compliance with this mandate.

15. The 2004 ADAAG adopted very specific guidelines calculated to ensure that ATM banking services were, in fact, fully accessible to, and independently usable by, individuals who are blind.

[3] Though the Effective Date of the 2010 Standards was March 15, 2011, the communication elements of Chapter 7 of the Standards—which frame Plaintiff's allegations in this case—did not become effective until March 15, 2012, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

16. Section 220.1 of the 2004 ADAAGs stated that "where automatic teller machines . . . are provided, at least one of each type provided at each location shall comply with Section 707."

17. In turn, Section 707 of the 2004 ADAAGs delineated very precise accessibility guidelines for ATMs, including guidelines calculated to ensure that ATMs are fully accessible to, and independently usable by, visually impaired individuals. These guidelines included, *inter alia*, the following elements: ATMs shall be speech enabled (i.e. talking ATMs)—Section 707.5; input controls shall be tactilely discernible—Section 707.6; function keys shall have specific tactile symbols—Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode.

18. As noted, the 2010 Standards adopt the 2004 ADAAG. The communication elements of the 2010 Standards are set forth at Chapter 7-- including, in relevant part, the elements which are expressly calculated to make ATMs fully accessible to, and independently usable by, visually impaired individuals. The Chapter 7 communication elements became fully effective on March 15, 2012.[4]

19. Defendant owns, operates, controls and/or leases a place of public accommodation.

20. Defendant's ATMs have never been fully accessible to, and independently usable by, blind individuals. They do not include speech enabling, Braille instructions or any other

---

[4] The DOJ has consistently taken the position that the communication-related elements of ATMs are auxiliary aids and services, rather than structural elements. *See* 28 CFR part 36, app. B at 728 (2009). Thus, the 2010 Standards do not provide a safe-harbor provision for implementation of these requirements unless compliance would cause an "undue hardship" upon a public accommodation.

auxiliary aids and services that would make the ATMs fully accessible to, and independently usable by, blind individuals.

21. Defendant has never had an institutional policy that is reasonably calculated to ensure that its ATMs be fully accessible to, and independently usable by, visually impaired individuals.

22. Defendant has a sister company doing business as Gateminder Corporation, which operates and processes approximately 140 ATMs throughout Ohio, Pennsylvania and West Virginia.

23. In the 2010 Annual Report for Tri-State 1st Banc, Inc., the corporate parent for both 1ST National Community Bank and Gateminder, page 12 of the Annual Report discusses the business of Gateminder, and states:

> 2011 should be another good year for Gateminder. However, the new year will also bring new challenges with changes in the American Disability Act [sic]. The Act has changed the requirements for ATM machines. ATMs will now be required to be positioned lower so as to accommodate wheel chair access. ***ATMs will also be required to be made accessible to those who are not able to read. Therefore, 'talking' ATMs are in the immediate future . . . .***

(emphasis added).

## JURISDICTION AND VENUE

24. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

25. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

26. Venue in this judicial district is proper under 28 U.S.C. §1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

27. Plaintiff, Robert Jahoda, is and, at all times relevant hereto, was a resident of the Commonwealth of Pennsylvania. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

28. Defendant, 1ST National Community Bank is a national bank headquartered at 16924 St. Clair Avenue, East Liverpool, Ohio 43920. Defendant is a public accommodation pursuant to 42 U.S.C. 12181(7)(F) which offers banking services through its ATMs.

**VIOLATIONS AT ISSUE**

29. After March 15, 2012, Plaintiff visited Defendant's ATM located at 629 Midland, Avenue, Midland, PA with a driver.

30. At the time of the visit, the ATM was not fully accessible to, and independently usable by, blind people.

31. The ATM has never been fully accessible to, and independently usable by, blind people at any time since its installation.

32. Defendant's ATMs are inaccessible because they use computer screen text prompts that are undetectable to blind people to guide consumers through banking transactions. These computer screen text prompts are not translated into a medium accessible to the blind, such as audio output.

33. Currently, if a blind person enters the wrong personal identification number ("PIN") at Defendant's ATM, the ATM may retain his or her card. Also, a blind person who presses an incorrect function key at Defendant's ATM has no way of knowing that he or she has made a mistake in the transaction.

34. As a result of Defendant's non-compliance with the ADA, Plaintiff and the Class, unlike persons without visual impairments, cannot independently use Defendant's ATMs.

35. Defendant's non-compliance threatens blind people with the loss of their private banking information. Blind people who wish to use Defendant's ATMs have no choice but to repeatedly reveal their private PINs to others to complete an ATM banking transaction.

36. In violation of Section 707.5 of the 2010 Standards, the ATM is not, and has never been, speech enabled.

37. In violation of Section 707.8 of the 2010 Standards, there are no Braille instructions on or at the ATM for initiating the speech mode for the machine.

38. In violation of Section 707.6.3.2 of the 2010 Standards, the "Clear" key in the keypad at the ATM does not have the correct tactile symbol.

39. In violation of Section 707.6.3.1, the function keys at the ATM do not contrast visually from background surfaces.

40. Notwithstanding its actual knowledge of the requirements of the ADA with respect to ATMs as described above, Defendant has never provided any auxiliary aids or services calculated to make the ATM fully accessible to, and independently usable by, blind people.

41. Notwithstanding its actual knowledge of the requirements of the ADA with respect to ATMs as described above, Defendant has never had any plan or policy calculated to make the ATM fully accessible to, and independently usable by, blind people.

42. Plaintiff resides within 15 miles of the location of Defendant's ATM described above.

43. Plaintiff has actual knowledge of the fact that Defendant's ATM lacks the mandatory elements required by the 2010 Standards to make the ATM fully accessible to, and independently usable by, blind people.

44. When Plaintiff visited Defendant's ATM, he had in his possession an ATM card, and headphones that are compatible with the 2010 Standards, and wanted the opportunity to avail himself of the banking services offered through Defendant's ATM.

45. As a blind individual, Plaintiff has a keen interest in whether public accommodations that offer banking services through ATMs are fully accessible to, and independently usable by, the blind, specifically including an interest in ensuring that ATMs possess all of the features required by the 2010 Standards.

46. Plaintiff intends to return to Defendant's ATM to ascertain whether it remains in violation of the ADA.

47. Based upon his interest in the subject matter of this lawsuit, Plaintiff has actual knowledge that even when public accommodations which offer ATM banking services attempt to provide speech guidance at their ATMs, the speech guidance features frequently do not function as required by the 2010 Standards.

48. For example, many ATMs have headphone jacks that do not function properly, or at all, and that therefore do not support the speech enabling that is required by the 2010 Standards.

49. In contrast to an architectural barrier at a public accommodation, wherein a remediation of the barrier to cause compliance with the ADA provides a permanent or long-term solution, the addition of, or repair to, a speech enabling function provided at the ATM of a public accommodation requires periodic monitoring to confirm, not only that the public accommodation

is in compliance in the first instance, but also that the public accommodation remains in compliance.

50. Without injunctive relief, Plaintiff will continue to be unable to independently use Defendant's ATM in violation of his rights under the ADA.[5]

**CLASS ALLEGATIONS**

51. Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all legally blind individuals who have attempted to access Defendant's ATMs.

52. The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

53. Typicality: Plaintiff's claims are typical of the claims of the members of the class. The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

54. Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its ATMs fully accessible and independently usable as above described.

55. Adequacy of Representation: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will

[5] Plaintiff intends to visit Defendant's ATMs periodically to monitor whether Defendant is in compliance with the ADA's requirements calculated to confirm that ATMs are fully accessible to, and independently usable by, blind people.

fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

56. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

**SUBSTANTIVE VIOLATION**

57. The allegations contained in the previous paragraphs are incorporated by reference.

58. Defendant has discriminated against Plaintiff and the Class in that it has failed to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(a) and Section 707 of the 2010 Standards, as described above.

59. Defendant has discriminated against Plaintiff and the Class in that it has failed to provide auxiliary aids and services calculated to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of 42 U.S.C. § 12182(b)(2)(A)(iii) and Section 707 of the 2010 Standards, as described above. Providing the auxiliary aids and services mandated by the ADA and Section 707 of the 2010 Standards would neither fundamentally alter the nature of Defendant's banking services nor result in an undue burden to Defendant.

60. Defendant's conduct is ongoing, and, given that Defendant has never complied with the ADA's requirements that public accommodations make ATM services fully accessible

to, and independently usable by, blind individuals, notwithstanding that those requirements have been in place since 1991, Plaintiff invokes his statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

61. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period of one year after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its ATMs be fully accessible to, and independently usable, by blind people is likely to recur.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action to ensure that its ATMs were fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to brings its ATMs into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the ATMs are fully accessible to, and independently usable by, blind individuals, specifically including all of the communications elements set forth in Section 707 of the 2010 Standards, and which further directs that the Court shall retain jurisdiction for a period of one year after Defendant certifies that all of its ATMs are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

c. An Order certifying the class proposed by Plaintiff, and naming Plaintiff as a class representative and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

f. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: March 28, 2012

Respectfully Submitted,

/s/ R. Bruce Carlson_______

R. Bruce Carlson (PA56657)
bcarlson@carlsonlynch.com
Stephanie Goldin (PA202865)
sgoldin@carlsonlynch.com
CARLSON LYNCH LTD
PNC Park
115 Federal Plaza, Suite 210
Pittsburgh, PA 15212
www.carlsonlynch.com
(p) 412 322-9243
(f) 412 231-0246